**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A CRIMINAL COMPLAINT**

I, Jonathan Wlodyka, being duly sworn, hereby depose and state as follows:

1. I am a Special Agent of the Internal Revenue Service, Criminal Investigation ("IRS-CI"), United States Department of Treasury, assigned to the Boston Massachusetts Field Office. I have been employed as a Special Agent with Internal Revenue Service, Criminal Investigation for more than 13 years. My responsibilities as a Special Agent include the investigation of criminal violations of the Internal Revenue laws (Title 26 of the United States Code), as well as criminal violations of Title 31 and Title 18 of the United States Code.

2. I graduated in February 2003 from the Federal Law Enforcement Training Center in Glynco, Georgia, where I received extensive training in the area of criminal investigations conducted by IRS-CI. Topics covered in training included the investigation of financial crimes, such as tax evasion, filing of false tax returns, failure to file tax returns, money laundering and conspiracy. I also received training in probable cause as it relates to search and seizure warrants, and methods and practices of executing such warrants. During my employment as a Special Agent, I have assisted in executing search warrants, arrest warrants, as well as executing subject and witness interviews, and I have been the affiant on multiple search warrants.

3. I make this affidavit in support of a criminal complaint charging RICHARD J. PANDOLFO ("PANDOLFO") with filing a false income tax return in violation of Title 26, United States Code, Section 7206(1). Specifically, as set forth below, I have probable cause to believe that in or about and between the tax years 2008 and 2012, PANDOLFO falsified his tax returns by failing to report more than $90,000 in income, in part by directing money to an account set up in the name of a business purportedly operated by his spouse, falsely claiming that

money as revenue of the business, and then improperly deducting personal expenses paid out of that account as business expenses.

4. I base this affidavit on: (a) my personal knowledge and involvement in this investigation; (b) information obtained from the IRS's Integrated Data Retrieval System ("IDRS"); (c) consultation with and information provided to me by other law enforcement agents; and (d) my professional training and experience as a criminal investigator. Because this affidavit is submitted for the limited purpose of establishing probable cause, it does not contain all information gathered during the investigation.

## Certain Relevant Persons and Entities

5. PANDOLFO is a resident of North Andover, Massachusetts. In or about and between 2008 and 2012 ("the Relevant Period"), PANDOLFO and his spouse annually filed federal income tax returns as a married couple filing jointly.

6. TP Consulting & Interior Design Group, Inc. ("TP Consulting") is a limited liability company, registered in the Commonwealth of Massachusetts. PANDOLFO's spouse is listed in corporate records as the sole owner and officer of TP Consulting. TP Consulting maintains a bank account at TD Bank (the "TP Consulting Account"). TP Consulting purports to offer interior design consulting services. As set forth below, however, the company appears not to have rendered any such services, or to have derived any revenue therefrom, during the Relevant Period

7. TP Consulting is an "S" Corporation for federal tax purposes. As such, it is required to report its annual revenues, expenses, and resulting profit or loss on a Form 1120-S filed with the IRS, and to pass through any profit or loss to the federal tax returns filed jointly by PANDOLFO and PANDOLFO's spouse. During the Relevant Period, TP Consulting filed

Forms 1120-S for the tax years 2010 and 2012.  TP Consulting did not file a form 1120-S for the tax year 2011.  However, I have reviewed a draft Form 1120-S for that year, which was prepared for the company by an accounting firm, but not filed.

8. PANDOLFO was employed during the Relevant Period as a senior sales executive at a large seafood processor and distributor (the "seafood processor") based in Gloucester, Massachusetts.  PANDOLFO reported to the seafood processor's president ("Individual").

9. Individual owns a minority stake in the seafood processor, which is majority-owned by a seafood conglomerate based in Hong Kong.

10. During the Relevant Period, the seafood processor utilized another entity (the "Labor Company"), purportedly to provide temporary labor to the seafood processor.  The Labor Company was controlled by Individual and others.

11. Individual also controlled two other limited liability companies ("Shell Company A" and "Shell Company B") that received payments from the Labor Company during the Relevant Period.  Shell Company A had no operations and no bank accounts, and appears to have performed no services for the Labor Company.  Shell Company B had no operations and appears to have performed no services for the Labor Company, but had a bank account in its name, which was controlled by Individual.

12. On or about November 19, 2015, Individual was indicted by a federal Grand Jury in the District of Massachusetts on one count of conspiracy to defraud the United States, in violation of Title 18, United States Code, Section 371, and three counts of making and subscribing a false tax return, in violation of Title 26, United States Code, Section 7206(1).  The charges relate to an alleged scheme to understate Individual's taxable income, and thereby to

avoid paying federal income taxes, in or about and between 2006 and 2009. The Indictment alleges, among other things, that Individual and a co-conspirator diverted more than $2 million from the Labor Company, through Shell Company A, to Individual's personal bank accounts, but did not report this income or pay taxes on it.

## Probable Cause

13. During the Relevant Period, the seafood processor, at Individual's direction, made regular payments to the Labor Company, for temporary labor services that the Labor Company purportedly provided to the seafood processor. The Labor Company, in turn, made regular payments to Shell Company A, and later to Shell Company B.

14. As noted, Shell Company A did not have a bank account. Instead, checks made out to Shell Company A were deposited into one or more personal bank accounts controlled by Individual, including an account at the First National Bank of Ipswich bearing the number xxxxxx1024 (the "1024 Account"). The payments by the Labor Company to Shell Company A that were deposited into the 1024 Account were the principal source of funds in that account during the Relevant Period. As noted, Individual did not report this income to the Internal Revenue Service ("IRS"), or pay taxes on it.

A. Payments from the 1024 Account to PANDOLFO and PANDOLFO's Spouse

15. In or about and between June 2008 and December 2009, PANDOLFO received at least 13 checks from the 1024 Account, each in the amount of $2,500. PANDOLFO caused the checks to be deposited into a personal checking account in his name at TD Bank. PANDOLFO did not report this income to the IRS or pay taxes on it.

16. In or about and between January 2008 and September 2009, PANDOLFO's spouse received at least seven checks from the 1024 Account. Each of those checks was also in

the amount of $2,500. The funds were deposited into a personal checking account in PANDOLFO's spouse's name at TD Bank. PANDOLFO and PANDOLFO's spouse did not report this income to the IRS or pay taxes on it.

17. In or about September 2009, PANDOLFO's spouse received a check, in the amount of $2,500, from Shell Company B. The funds were deposited into a personal checking account in her name at TD Bank. PANDOLFO and PANDOLFO's spouse did not report this income to the IRS or pay taxes on it.

18. On or about August 1, 2014, a Special Agent of IRS-CI interviewed PANDOLFO by telephone. PANDOLFO contended that the checks that he and his spouse received from Individual were for interior design consulting services that PANDOLFO's spouse provided to Individual. PANDOLFO stated that he had also provided consulting services to Individual and some of the payments could have been for that as well. PANDOLFO further stated that all of the consulting income he and his spouse received was reported on their federal income tax returns.

19. On or about September 29, 2015, I spoke with PANDOLFO's spouse and asked her about the $2,500 monthly payment she had received from Individual and Shell Company B. She contended that she received the funds from Individual for interior design work that she had performed for his business.

B. <u>Payments from Shell Company B to TP Consulting</u>

20. In or about and between 2009 and 2012, TP Consulting received at least 36 checks, totaling at least $95,000, from Shell Company B. With the exception of two checks in the amount of $5,000, the other checks were each in the amount of $2,500. The funds were deposited into the TP Consulting Account. The payments from Shell Company B constituted the principal deposits into the TP Consulting Account during the Relevant Period.

21. In or about November 2015, I served PANDFOLO's spouse with a grand jury subpoena, directed to the custodian of records of TP Consulting, seeking all invoices, receipts, contracts or other records of payment reflecting any design or consulting work performed during the period January 1, 2007 through the date of the subpoena. In response to the subpoena, I received no documents from PANDOLFO's spouse. I did receive a production of documents from the accounting firm that prepared TP Consulting's income tax returns for the period 2010 to 2012. The production included certain tax returns, accounting work papers, general ledgers, and check stubs, but did not include any invoices, contracts, or other documents reflecting any design or consulting work during the Relevant Period.

22. In or about March 2016, the government served a grand jury subpoena on Shell Company B, directed to the company's custodian of records, seeking all records relating to PANDFOLO, PANDOLFO's spouse, and TP Consulting. In response to the subpoena, I received a production of documents that included canceled checks and accounting entries reflecting the regular $2,500 payments described above. The production did not include any invoices, contracts, or other documents reflecting any design or consulting work during the Relevant Period, or, indeed, any documents reflecting the nature of the services purportedly provided in exchange for the $2,500 payments.

23. Notwithstanding the foregoing, the payments from Shell Company B were reported as business revenue on the S-Corporation returns filed by TP Consulting for the tax years 2010 and 2012. As noted, TP Consulting did not file a tax return for the tax year 2011. However, I have reviewed a draft of the 2011 return that was prepared by the company's accountants, which also listed the payments from Shell Company B as business revenue of TP Consulting.

C. <u>Purported Business Expenses of TP Consulting</u>

24. I have reviewed bank records for the TP Consulting Account. The records appear to reflect few, if any, of the types of expenses that might be expected of a functioning business. Rather, the account appears to have been used almost exclusively to pay personal expenses of PANDOLFO and PANDOLFO's spouse, including payments for personal automobiles, school tuition, and house cleaning services.

25. For example, in or about 2010, checks from TP Consulting totaling $1,454.05 were made out to Wells Fargo Dealer Services ("Wells Fargo"). I have reviewed Wells Fargo records indicating that the payments were for a 2009 Hyundai Santa Fe that was purchased in February 2010, and registered to PANDOLFO and a relative.

26. Similarly, in or about 2010, checks from TP Consulting totaling $1,200 were made out to SCS Cleaning Services ("SCS"). The owner of SCS told me that (1) SCS is a cleaning company that provides residential cleaning services; (2) SCS has been cleaning the PANDOLFO residence for approximately twenty four years; (3) SCS currently cleans the PANDOLFO residence on a bi-weekly basis.

27. In or about 2010, American Garage Door & Glass ("American Garage Door") received a check from TP Consulting in the amount of $709.97. According to the office manager for American Garage Door, the payment was for glass the company installed on the third floor of the PANDOLFO residence.

28. In or about 2010, Marty's Furniture received payments from TP Consulting totaling $4,900. According to an owner of Marty's Furniture, the payments were for a dining room table and ten chairs, a smaller table and four chairs, and a king size mattress, foundation,

and bed frame.  According to an invoice for the furniture, it was delivered to the PANDOLFO residence in or about and between February 2010 and October 2010.

29.     The 2010 S-Corporation return for TP Consulting identified $14,910 in purported business expenses and other deductions, which offset the company's reported business income of $30,000.  The business expenses and other deductions appear to be based on the personal expenses set forth above.  As a result of these deductions, TP Consulting reported $15,090 in net income in 2010, which passed through to the personal income tax return of the PANDOLFOs.  That return was filed on or about April 15, 2011.  In fact, as the foregoing indicates, the money reported as revenue by TP Consulting for that year was not generated by any business activity, and the purported business expenses and other deductions were actually non-deductible personal expenses.

30.     The draft 2011 S- Corporation return for TP Consulting, and the 2012 S-Corporation return that was filed for the company on or about September 17, 2013, similarly appear to reflect the monies received from Shell Company B as revenues, and personal expenses, such as payments to Wells Fargo and SCS Cleaning, as purported business expenses.

31.     In 2011, PANDOLFO and his spouse reported $19,500 in income from TP Consulting on their personal tax return, which was filed on or about April 15, 2012.  In fact, the payments to TP Consulting from Shell Company B in that year were $30,000, and all of that money should have been reported as income.

32.     In 2012, PANDOLFO and his spouse reported income of $19,577 from TP Consulting on their personal tax return, which was filed on or about April 15, 2013.  In fact, the payments from Shell Company B in that year totaled $30,000, and all of that money should have been reported as income.

33.     In or about November 2015, I interviewed the accountant who prepared the personal tax returns for PANDOLFO and PANDOLFO's spouse during the Relevant Period. The accountant was not the same accountant who prepared the S-Corporation returns for TP Consulting during that period.  In the interview, the accountant told me that PANDOLFO had provided him with the information he required to prepare personal tax returns for PANDOLFO and PANDOLFO's spouse during the Relevant Period.

## Conclusion

34.     For the one-year period in or about and between January 1, 2009 and December 31, 2009, PANDOLFO, his spouse, and TP Consulting received checks totaling $25,000 from the 1024 Account and Shell Company B, including the amounts set forth above. Notwithstanding the fact that PANDOLFO knew that he and his spouse had received this income, PANDOLFO reported only $1,500 of it as "other income" on line 21 of his 2009 U.S. Individual Income Tax Return (the "2009 Return"), which return was prepared by an accountant on his behalf.  PANDOLO thus failed to report, or pay taxes, on $23,500 in income that he and his spouse received in that year, which income should have been reported on line 7, reflecting wages, salaries or tips, line 12, reflecting business income, line 21, reflecting other income, or otherwise, and should also have been reported on line 22, reflecting total income.  PANDOLFO caused the 2009 Return to be electronically signed – thereby declaring under penalties of perjury that it was true, correct and complete to the best of his knowledge and belief – and filed with the IRS on or about April 15, 2010.

35.     Accordingly, based on my knowledge, training and experience and the facts set forth in this affidavit, I have probable cause to believe and I do believe that, on or about April 15,

2010, RICHARD J. PANDOLFO, filed a false income tax return for the tax year 2009, in violation of Title 26, United States Code, Section 7206(1).

Sworn to under the pains and penalties of perjury.

_____
Jonathan Wlodyka
Special Agent
Internal Revenue Service – Criminal Investigation

Subscribed and sworn to before me April 6, 2016

_____
The Honorable M. Page Kelley
United States Magistrate Judge